# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

RONALD JACKSON, BRYANT                                   CIVIL ACTION
WILLIAMS, ALPHONSE McGHEE,
ALESI NGEMI, TYRONE HOWARD,
MYNESHA HOLLIDAY, JOSHUA                                 20-452-SDD-EWD
WHITFIELD, AND RICHARD WHITE, III

VERSUS

THE COUNTRY CLUB OF LOUISIANA,
INC. AND OMAR MANRIQUEZ

## RULING

This matter is before the Court on the *Motion to Dismiss*[1] filed by Defendants, The

Country Club of Louisiana ("CCL") and Omar Manriquez ("Manriquez," or collectively

"Defendants").   Plaintiffs, Ronald Jackson ("Jackson"), Bryant Williams ("Williams"),

Alphonse McGhee ("McGhee"), Alesi Ngemi ("Ngemi"), Tyrone Howard ("Howard"),

Mynesha Holliday ("Holliday"), Joshua Whitfield ("Whitfield"), and Richard White, III

("White")(or collectively, "Plaintiffs") filed an *Opposition*[2] to this motion, to which

Defendants filed a *Reply*.[3]  For the following reasons, the *Motion* will be granted in part

and denied in part, with limited leave to amend.

## I.    FACTUAL BACKGROUND

This case arises out of employment disputes among Plaintiffs, who all recently

worked at CCL under the management of Manriquez, and CCL.  This matter was originally

---

[1] Rec. Doc. No. 10.
[2] Rec. Doc. No. 20.
[3] Rec. Doc. No. 23.

filed in Louisiana state court, and Defendants properly removed this matter to this Court on July 13, 2020.[4]  Plaintiffs claim that, after Manriquez was hired as General Manager of CCL in 2015, Plaintiffs and other co-workers were subjected to a racially hostile work environment by Manriquez's and Chef Corey Bowers' ("Bowers")[5] use of racial slurs and comments regarding Plaintiffs' appearances and job performances.[6]  Ultimately, Plaintiffs contend Defendants also retaliated against and terminated them based on their race.[7] Plaintiffs allege they repeatedly reported this behavior to supervisors and Human Resources, to no avail.[8]  Plaintiffs also appear to assert a claim for disparate treatment, alleging that Manriquez allowed Hispanic employees privileges and benefits not allowed to African-American employees, and he "unevenly and harshly" disciplined African-American employees for lesser rules violations than Hispanic employees.[9]  Plaintiffs allege that Manriquez and Bowers "engaged in an intense level of abusive treatment," which was ratified or endorsed by CCL, who allegedly refused to "mitigate or curtail or end the unlawful behavior."[10]

Plaintiffs also claim that a myriad of state law torts were committed against them, including *inter alia*, intentional infliction of emotional distress ("IIED") and wrongful termination, which Plaintiffs contend fall outside of the exclusivity of the Louisiana Worker's Compensation Act ("LWCA").[11]  Plaintiffs also assert race discrimination claims under 42 U.S.C. § 1981(b).[12]

---

[4] Rec. Doc. No. 1.
[5] Bowers was later named as a Defendant but is not a movant herein.
[6] Rec. Doc. No. 1-4, p. 2.
[7] *Id.*
[8] *Id.* at p. 3.
[9] *Id.* at pp. 3-4.
[10] *Id.* at p. 4.
[11] *Id.* at p. 5.
[12] *Id.* at p. 6.

Defendants now move to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure all state law claims asserted in this matter.  Defendants admit they do not move to dismiss Plaintiffs' 42 U.S.C. § 1981(b) claims.[13]  Defendants quote directly from Plaintiffs' state court supplemental petition in specifying the claims they seek to dismiss against all Defendants:

> 1. Racial Discrimination against all petitioners relative to each petitioner's employment with defendant company;
> 2. Allowing supervisory employees including defendant Manriquez and Corey Bowers to allow an open culture of racial abuse of African American employees and allowing other CCLA employees and supervisors under their management and direction to do the same;
> 3. Retaliatory Discharge for petitioners RONALD JACKSON, BRYANT WILLIAMS, ALPHONSE MCGHEE, ALESI NGEMI, TYRONE HOWARD, MYNESHA HOLLIDAY, JOSHUA WHITFIELD and RICHARD WHITE, III filing complaints to management relative to their enduring a Hostile Working Environment and other tortuous abuse as described above;
> 4. Constructive Retaliatory Discharge for petition MYNESHA HOLLIDAY relative to her filing complaints to management for Hostile Working Environment and other tortuous abuse ad described above;
> 5. Failing to properly respond and act to remedy the conditions communicated to the defendant CCLA via complaints filed by the petitioners with the responsible supervisory employees of CCLA;
> 6. Failure to supervise employees;
> 7. Failure to properly train employees;
> 8. Intentional infliction of emotional distress;
> 9. Violation of Louisiana Civil Code article 2315;
> 10. Violation of Louisiana Civil Code article 2320;
> 11. Violation of Louisiana Revised Statute 23:301 et seq;
>                                    …
> 14. All other intentional acts, omissions, and acts of negligence that may be proven at the trial of this matter.[14]

Defendants seek dismissal of the following claims asserted against Manriquez:

> 1. Racial Discrimination;
> 2. Failure to supervise employees;
> 3. Failure to properly train employees;
> 4. Intentional infliction of emotional distress;

---

[13] Rec. Doc. No. 10-2, p. 3.
[14] Rec. Doc. No. 1-4, pp. 6-7.

5. All of the named defendants' separate and collective acts of Racially Discriminatory Interference and Denial of each of the Plaintiff's respective opportunities to employment in their respective positions with the defendant employer;

…

7. Open racial abuse of African American employees and allowing other CCLA employees and supervisors under his management and direction to do the same;

8. Retaliatory Discharge for petitioners, RONALD JACKSON, BRYANT WILLIAMS, ALPHONSE MCGHEE, ALESI NGEMI, TYRONE HOWARD, MYNESHA HOLLIDAY, JOSHUA WHITFIELD and RICHARD WHITE, III making complaints to management for Hostile Working Environment and other tortuous abuse as described above;

9. Constructive Retaliatory Discharge for all petitioner MYNESHA HOLLIDAY making complaints to management for Hostile Working Environment and other tortuous abuse ad described above;

10. All other intentional acts, omissions, and acts of negligence that may be proven at the trial of this matter.[15]

Plaintiffs oppose the motion, arguing that their state law claims are legally viable, or should be, and Defendants' motion should be denied.

## II.    LAW & ANALYSIS

### A.  Motion to Dismiss Under Rule 12(b)(6)

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[16]  The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[17]  "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[18]  In *Twombly*, the United States Supreme

---

[15] *Id.* at pp. 89.

[16] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

[17] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

[18] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d at 467).

Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[19]   A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[20]  However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[21]  In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[22]  "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[23]  On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[24]

## B. Claims for Discrimination or Retaliation under the Louisiana Employment Discrimination Law ("LEDL")

The LEDL, codified at La. R.S. 23:301, *et seq.*, prohibits discrimination in the workplace on the basis of race and other protected classes.  It also prohibits an employer from engaging in any forms of discrimination.[25]   The LEDL also defines who/what

---

[19] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(internal citations and brackets omitted)(hereinafter *Twombly*).

[20] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(internal citations omitted)(hereinafter "*Iqbal*").

[21] *Twombly*, 550 U.S. at 570.

[22] *Iqbal*, 556 U.S. at 678.

[23] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

[24] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

[25] La. R.S. 23:332.

constitutes an employer under this statute, and it exempts certain entities from being considered employers. La. R.S. 23:302(2)(b) provides that the LEDL does not apply to the "[e]mployment of an individual by a private educational or religious institution or any nonprofit corporation…." Thus, Defendants maintain any claims asserted under the LEDL against CCL and its employees must be dismissed as CCL is a nonprofit corporation. This assertion is supported by Louisiana Secretary of State record submitted by Defendants demonstrating that CCL is a nonprofit corporation.[26]

Plaintiffs make somewhat confusing arguments in opposing the motion on this issue, arguing: "Plaintiffs here rightly insist that all of those conditions are present here to maintain their respective tort claims, and that this Court should rightly NOT dismiss Plaintiff's claims as somehow futile for not being actionable under Louisiana law."[27] Plaintiffs appear to believe that the issue is whether the LEDL (and other state law claims) should remain in this Court, and they should not have to proceed in both state court and federal court on the same set of facts. However, Defendants did not move to remand the LEDL claims but dismiss them as having no legal basis in federal or state court.

Unable to challenge the fact that CCL is a nonprofit corporation in the State of Louisiana, Plaintiffs make mostly policy arguments to the Court why this designation is unfair or unjust:

> Specifically, defendants claim The Country Club of Louisiana exists as nonprofit corporation, and therefore, that any level of racial or sexual origin or disability discrimination, unlawful in the context of any employer in Louisiana, and dare say the United States of America, is magically permissible because the defendant CCL found it's [sic] way to fill out an application with the Louisiana Secretary of State to run it's business as a Golf Course, Restaurant, Country Club and wedding reception hall as a "non-profit". In the defendants' argument, filling out a $300 application at a

---

[26] Rec. Doc. No. 10-3. The Court may take judicial notice of a state public record in a Rule 12(b)(6) motion.
[27] Rec. Doc. No. 20, p. 10.

state bureaucratic office on Essen Lane in Baton Rouge somehow allows the employees to be treated by the employer and supervisors and co-workers as victims of they were minority sanitation workers in 1967 Memphis, or workers in 1950s South Africa, or were Postal Workers in 1919 Washington, DC after Woodrow Wilson decided to purge the U.S. Civil Service of Black employees. Is that acceptable?

Just because the Louisiana Legislature – however their motivations – sought to amend the LEDL to amend discrimination laws to not require Evangelical churches to hire transvestite men to teach Sunday Bible School Classes, the Legislature nor the public sought to make the Law of The Land to exempt any employer or business or workplace from blatant and abusive discriminatory practices that would be unacceptable in any humane or civil context – solely because of an application and a fee paid creating a kryptonite defense to any abuses conjured or acted upon in any workplace. Who knew that any employer - including any those crawling over the legal definition of non-profit status – could lawfully behave in mistreating Black employees as Bull Connor or Hendrik Verwoerd might have on their worst day, as long as they send in their fees to Essen Lane. Such a proposition is ridiculous, and an insult to the law.[28]

Next, Plaintiffs argue the Court should not take judicial notice of the Secretary of State records designating CCL as a nonprofit corporation; rather, the Court must accept as true the allegation in Plaintiffs' petition that CCL is a domestic corporation. Plaintiffs contend:

The defendants owe it to this Court to PROVE the defendant CCL is an actual, and not a sham non-profit. In fact, it is a Country Club, Restaurant, Golf Course and Reception Hall. It is not a church or temple, it is not a charitable organization, and it is not an educational institution, the business that it conducts is that of a for-profit business, paper applications notwithstanding. In this case, the Court *must* consider the CCL operating as a domestic corporation on its face. Judicial Notice of a paper application status of the CCL is not determinative nor should it be.[29]

Plaintiffs argue in the alternative, should the Court accept the Secretary of State's designation of CCL as a nonprofit corporation, Plaintiffs "reserve their rights to orally

---

[28] *Id.* at pp. 20-21.
[29] *Id.* at p. 22. The Court notes that Plaintiffs' policy arguments are more appropriately directed to the Louisiana state legislature.

argue on appeal" that the exclusion of nonprofit corporation employees from coverage under the LEDL violations the United States Constitution.[30]

Despite Plaintiffs' efforts urging the Court to disregard the Secretary of State record designating CCL as a nonprofit corporation, the Court must take judicial notice of this public record, and Plaintiffs have cited no authority that supports their arguments on this issue.  Indeed, the law is well-settled that courts must take judicial notice of Louisiana Secretary of State records (and other matters of public record) in determining identity, citizenship, and business status of business entities involved in litigation.[31]  For example, in *Thomas v. New Leaders for New Schools*,[32] the district court for the Eastern District of Louisiana noted that, although a party failed to affirmatively state that it was a nonprofit corporation, "because the organization is registered as a non-profit corporation with the Louisiana Secretary of State, the Court will take judicial notice of this fact."[33]  Further, In *Foreman v. Our Lady of Lourdes Regional Medical Center, Inc.*,[34] the district court for the Western District of Louisiana addressed the exact issue presented here – whether a nonprofit corporation was subject to the LEDL.  The *Foreman* court held that, as a nonprofit corporation, the defendant was not an "employer" for purposes of the LEDL.[35] Plaintiffs have failed to direct the Court to any legal or jurisprudential authority that

---

[30] *Id.* at pp. 22-23. Statements regarding appeal are premature and not before this Court.
[31]  *See* Fed.R.Evid. 201(b), (c); *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (noting that it is "clearly proper" for a district court "to take judicial notice of matters of public record"); *Williams v. Homeland Ins. Co. of N.Y.*, 657 F.3d 287, 291, n. 5 (5th Cir. 2011) (characterizing the Louisiana Secretary of State's records as a "public records" database).
[32] 278 F.R.D. 347 (E.D. La. 2011).
[33] *Id.* at 349, n 5 (citing Fed.R.Evid. 201(c); Norris v. Hearst Trust, 500 F.3d 454, 461 n. 9 (5th Cir.2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.") (citing Cinel v. Connick, 15 F.3d 1338, 1343 n. 6 (5th Cir.1994))).
[34] 2013 WL 5410135 (W.D. La. Sep. 25, 2013).
[35] *Id.* at *5.

supports their arguments on this issue.  Accordingly, claims brought under the LEDL are dismissed with prejudice.[36]

### C.  State Law Negligence Claims and the LWCA

Defendants also move to dismiss all state law negligence claims asserted by Plaintiffs, particularly claims for "failing to respond and remedy work conditions, failure to supervise employees, failure to train employees, violations of La. Civil Code Arts. 2315 and 2320, allowing supervisory and other employees to have an open culture of racial abuse, and other unspecified acts of negligence." [37]  Because these claims are based in negligence, Defendants contend Plaintiffs' exclusive remedy for negligence claims is via Louisiana's workers compensation scheme.  Defendants note that La. R.S. 23:1021, *et seq.*, provides immunity to an employer from negligence-based actions brought by employees.

Plaintiffs counter that the LWCA provisions do not apply to their claims because they are asserted as intentional and/or reckless conduct that "rise to the level of abusiveness and presumed desired injury, and intent of the defendant/actors to do same," which Plaintiffs claim are compensable under jurisprudence allowing damages for IIED claims.  Plaintiffs also contend that their damages are for mental injuries, which are excluded for worker's compensation coverage under La. R.S. 23:1021(8), which provides: "Mental injury caused by mental stress. Mental injury or illness resulting from work-related

---

[36] Alternatively, Defendants move to dismissed Manriquez under the LEDL, arguing that Plaintiffs identified him only as a supervisor and not as their "employer" in the petition; Manriquez does not meet the statutory requirements to be an employer under the LEDL; and, LEDL claims asserted against Manriquez were previously dismissed by the state court before removal.  *See* Rec. Doc. No. 1-5.  The Court agrees that Manriquez is not an "employer" under the LEDL, and to the extent Plaintiffs attempt to assert such a claim herein, it is dismissed with prejudice.

[37] Rec. Doc. No. 10-2, p. 7 (citing Rec. Doc. No. 1-4, pp. 6-9).

stress shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter." Because Plaintiffs suffered only mental injuries rather than physical injuries, they claim "no exclusion from cause of action of general negligence exists for the CCLA."[38]

In reply, Defendants cite La. R.S. 23:1032(A)(1)(a), which expressly provides that the worker's compensation scheme "shall be exclusive over all other rights, remedies, and claims for damages…as against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer… ." Defendant argue that "[t]he clear and unambiguous provisions of this statute, along with Louisiana Supreme Court precedent, make it clear that Plaintiffs have no negligence-based claims against either CCL or Manriquez."[39]

The Court finds that, to the extent Plaintiffs assert any negligence claims against Defendants, such claims fall within the exclusive remedy of the LWCA. Plaintiffs do not offer appliable jurisprudence to support the contrary argument. A general overview of the LWCA is relevant to the Court's analysis. The Western District of Louisiana in *Marceaux v. Lafayette City-Parish Consol. Government*[40] precisely explained the interplay between Louisiana tort law and the LWCA:

> Article 2315 is the seminal statute for Louisiana tort law. Article 2317 modifies Article 2315 by expressly making employers liable for the torts of their employees. Under the Louisiana Workers' Compensation Act, La. R.S. 23:1032, however, an employee injured while in the course and scope of his employment is generally limited to the recovery of workers' compensation benefits as his exclusive remedy against his employer and may not sue his employer in tort. The workers' compensation statute represents a compromise by which the employer and employee both

---

[38] Rec. Doc. No. 20, p. 8.
[39] Rec. Doc. No. 23, p. 2 (citing *Bazley v. Tortorich*, 397 So.2d 475 (La. 1981); *Walls v. Am. Optical Corp.*, 740 So.2d 262, 1265-6 (La. 1999)).
[40] 921 F.Supp.2d 605 (W.D. La. 2013).

surrender valuable rights, with the employee agreeing to accept the certainty of workers' compensation benefits as his exclusive remedy in exchange for surrendering his right to seek tort recovery from his employer.[41] This principle also immunizes employees against negligence claims by their co-workers.[42]

In *Olmeda v. Cameron Intern. Corp.*, the Eastern District of Louisiana addressed claims brought by a temporary contract worker, who was half-white and half-Hispanic, for alleged race or national origin-based hostile work environment and retaliation, in violation Title VII, and for alleged violation of state law, following off-premises, off-duty drive-by shooting by two drunken co-workers who fired shotgun at worker's moving vehicle.[43] Finding that the plaintiff's negligence claims - negligent screening, hiring, and supervision - did not survive the exclusivity bar of the LWCA, the court rejected the plaintiff's argument that his claims involved intentional torts rather than negligence claims, finding that the plaintiff "provides no support for his argument; he fails to suggest how his negligence claims against Cameron survive the exclusivity provisions of the Act. La.R.S. 23:1032(A)."[44]

Another section of this Court, in *Patton v. Jacobs Engineering Group, Inc.*, rejected the plaintiff's argument that, because his injuries resulted from the hostile work environment he suffered, such a mental injury was compensable by La. R.S. 23:1021(8)(b).[45]  The Court explained:

> The statute specifically provides that the rights and remedies it grants an employee against an employer for unintentional acts "shall be exclusive of all other rights, remedies, and claims for damages," unless otherwise

---

[41] *Id.* at 644 (citing *Harris v. Wal–Mart Stores, Inc.*, 205 F.3d 847, 849 (5th Cir. 2000). *See, also, Benoit v. Turner Industries Group, L.L.C.*, 2011–1130 (La.01/24/12), 85 So.3d 629, 634).

[42] *Id.* (citing *White v. Monsanto Co.*, 585 So.2d 1205, 1208 (La.1991) ( "LSA–R. S. 23:1032 makes worker's compensation an employee's exclusive remedy for a work-related injury caused by a co-employee, except for a suit based on an intentional act.")).

[43] 139 F.Supp.3d 816 (E.D. La. 2015).

[44] *Id.* at 836.

[45] 2015 WL 3964719, *3 (M.D. La. June 29, 2015).

expressly created by statute. La.Rev.Stat. § 23:1032(A)(1)(a). Louisiana courts have consistently interpreted this language to mean that the statute bars negligence claims against an employer. *E.g., Pearson v. IHOP*, No. 09–3071, 2010 WL 971798, at *3–4 (E.D.La. Mar.10, 2010). Louisiana courts have also generally held that this exclusivity provision bars employee claims against employers for negligent infliction of emotional distress. *E.g., Gonzales v. T. Baker Smith, LLC*, No. 13–644–SDD–RLB, 2014 WL 905281, at *1–2 (M.D.La. Mar.7, 2014).[46]

The Court continued:  "current Louisiana case law … states that '[t]he mere showing that mental injury was related to general conditions of employment, or to incidents occurring over an extended period of time, is not enough to justify compensation' under the Louisiana Workers' Compensation Statute."[47]

Accordingly, any negligence-based claims asserted by Plaintiffs herein are dismissed with prejudice as the LWCA provides the exclusive remedy for damages resulting from such claims.

### D.  La. C.C. art. 2315 and Discrimination/Retaliation Claims

Citing to a wealth of supporting jurisprudence, Defendants also move to dismiss any discrimination and/or retaliation claims asserted by Plaintiffs pursuant to Louisiana Civil Code articles 2315 (and/or 2320), arguing these articles cannot serve as the basis for a cause of action derived from employment discrimination.[48]

Plaintiffs respond by citing to the text of La. C.C. arts. 2315 and 2324(A), referring

---

[46] *Id.*

[47] *Id.* (quoting *Adams v. Tempe Inland*, 03–0187, p. 5 (La.App. 3 Cir. 11/05/03), 858 So.2d 855, 859, (Doc, 10 at p. 6)).

[48] Rec. Doc. NO. 10-2, p. 8 (citing *McCoy v. City of Shreveport*, 492 F.3d 552, 563 (5th Cir. 2007)("Louisiana Civil Code article 2315 does not protect against employment discrimination, which is the basis of [plaintiff's] complaint"); *Loftice v. Mobile Oil Exploration and Production U.S., Inc.*, 1999 WL 744049, *4 (E.D. La. 1999) ("Article 2315 has never and does not now provide a cause of action for employment discrimination"); *Roper v. Exxon Corp.*, 27 F.Supp.2d 679, 684 (E.D. La. 1998) (holding that even if the plaintiff could have established his allegation of employment discrimination, he could not recover under Louisiana Civil Code article 2315)).

to their "broad dictate."[49]  Plaintiffs also focus on not having to proceed with these state law claims in state court and the interest of justice in keeping them in federal court with their federal employment claims.  However, again, Plaintiffs miss the point.  These claims are not viable in state or federal court for the reasons argued by Defendants.  Plaintiffs ignore those cases relied upon by Defendant and proceed to argue the elements of a state law defamation claim which has not been pled in this matter.  Plaintiffs completely ignore the numerous cases supporting a finding that Plaintiffs cannot maintain employment discrimination and related claims under general Louisiana Civil Code articles.[50]

The United States Court of Appeals for the Fifth Circuit held in *McCoy v. City of Shreveport* that Louisiana Civil Code article 2315 cannot serve as the basis for a cause of action that is derived from employment discrimination.[51]  Specifically, the court found that, "[t]o the extent that McCoy argues that her tort claim was not limited to intentional infliction of emotional distress, Louisiana Civil Code article 2315 does not protect against employment discrimination, which is the basis of McCoy's complaint."[52]

In *Roberson-King v. Louisiana Workforce Commission*,[53] the Fifth Circuit affirmed a district court's dismissal of a plaintiff's employment discrimination claims brought generally under Article 2315, finding that "[t]he Louisiana legislature has developed a specific statutory scheme to address employment discrimination. The LEDL provides

---

[49] Rec. Doc. No. 20, p. 8.
[50]  Plaintiff is correct that Title VII jurisprudence may be used to interpret LEDL claims.  However, here, Plaintiffs failed to assert any Title VII claims, and their LEDL claims have been dismissed for the reasons set forth herein.
[51] 492 F.3d 551 (5th Cir. 2007).
[52] *Id.* at 563 n. 34.
[53] 904 F.3d 377 (5th Cir. 2018).

employees with a state cause of action against employers, employment agencies, and labor organizations, and specifies the remedies available in civil discrimination suits."[54] Noting that the plaintiff "identifie[d] no Louisiana state court decisions permitting recovery for employment discrimination under Article 2315," and "[b]ecause such a cause of action is inconsistent with the LEDL," the court held that the district court correctly dismissed this claim.[55]

In *Story v. Our Lady of Lake Physician Group*,[56] another section of this Court addressed an employment discrimination case wherein the plaintiff asserted both federal employment discrimination claims and claims of retaliation and discrimination on account of age, race, and sex under La. C.C. art. 2315.  The defendant moved to dismiss employment discrimination claims brought under Article 2315, arguing that "'[t]he only statutes allegedly violated pertain to Plaintiff's allegations of employment discrimination and retaliation,' and the specific remedies provided for in Louisiana's employment discrimination statutes supersede and replace any general remedy available under Article 2315."[57]

Looking to the history and competing decisions addressing this issue, the Court noted:

> Plaintiff has cited no Louisiana decision that has actually held that the violation of a federal or state employment discrimination statute creates a concomitant tort claim under Article 2315. He has also cited no case that would indicate that the Louisiana courts are no longer strictly applying the employment at will doctrine except in cases of an employment contract or when a specific statutory limitation like the ADEA or Title VII is applicable. The absence of such authority and the application of principles of statutory

---

[54] *Id.* at 380 (citing La. Rev. Stat. § 23:303(A)).
[55] *Id.* That Plaintiffs' claims are not viable under the LEDL because CCL is not an "employer" pursuant to the LEDL does not change the fact that such claims remain unavailable under La. C.C. art. 2315.
[56] 2018 WL 1902687 (M.D. La. Apr. 20, 2018).
[57] *Id.* at *3 (citation omitted).

interpretation compel a conclusion that the Supreme Court would not interpret Article 2315 in such a fashion.[58]

Based on the foregoing jurisprudence, Plaintiffs' employment discrimination and retaliation claims brought under La. C.C. art. 2315 are dismissed with prejudice.

### E.    IIED Claims

Defendants next move to dismiss the IIED claims asserted against CCL and Manriquez, arguing that Plaintiffs have failed to set forth sufficient factual allegations to support these claims because Plaintiffs have lumped Defendants' actions together and have alleged only generalized, conclusory facts as to this claim that do not rise to the level of "utterly intolerable" conduct as required by the law.

Plaintiffs argue they have sufficiently pled claims for IIED, arguing that the "constant abuse and disparate racially-based mistreatment" by Manriquez and Bowers of Plaintiffs and other African-American co-workers was:

> conduct in frequency, intensity and effect which rose to the level of being extreme and outrageous, were intense and frequent enough to cause severe emotional distress suffered by the plaintiffs, some of which sought counseling or medical treatment for, and were of such an abusive manner as to reasonably conclude that the defendant/actors actually desired to inflict severe emotional distress and/or knew that severe emotional distress would be certain or substantially certain to result from their treatment of the plaintiffs herein.[59]

Plaintiffs also cite language from a Louisiana state court decision in *Walters v. Rubicon, Inc.*,[60] for the proposition that "conduct which is otherwise inactionable can become actionable as 'extreme and outrageous' when the offender is in a position of power and authority over the plaintiff."[61]    *Walters* dealt with an employee-supervisor relationship and

---

[58] *Id.* at *6.
[59] Rec. Doc. No. 1-4, p. 5; Rec. Doc. No. 20, p. 6.
[60] 96-2294 (La. App. 1 Cir. 12/29/97), 706 So. 2d 503.
[61] *Id.* at 506.

noted that the consideration of power in the employment context is particularly important because of the "notion that the same conduct may be privileged under other employment circumstances so that disciplinary action and conflict in a pressure-packed workplace environment, although calculated to cause some degree of mental anguish, is not ordinarily actionable."[62]

In testing the sufficiency of the allegations to determine whether Plaintiffs have pled claims for IIED under the law, the Court turns to the standards applied to this state law intentional tort. The Louisiana Supreme Court has held that:

> in order to recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.[63]

The Louisiana Supreme Court further held that "rough language" is not an appropriate basis for an IIED claim.[64] In fact, the Louisiana Supreme Court has explained that "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."[65]

However, as the court held in *Nicholas v. Allstate Ins. Co.*, in the employment setting, Louisiana limits the IIED cause of action "to cases which involve a pattern of

---

[62] *Id.*
[63] *Nicholas v. Allstate Ins. Co.*, 1999-2522 (La. 8/31/00), 765 So. 2d 1017, 1022 (quoting *White*, 585 So.2d at 1209).
[64] *White v. Monsanto*, 585 So.2d 1205, 1209 (La. 1991).
[65] *Id.*

deliberate, repeated harassment over a period of time."[66]  According to the *Nicholas* court, Louisiana adheres to the national majority view which requires "truly outrageous conduct before allowing a claim for intentional infliction of emotional distress even to be presented to a jury."[67]  The *Nicholas* court cites numerous cases that illustrate the type of conduct that is insufficient to establish IIED, including: *Smith v. Ouachita Parish Sch. Bd*,[68] wherein the court held that the wrongful demotion and transfer of a teacher within a school system did not constitute extreme and outrageous conduct, despite causing emotional and psychological distress; *Stewart v. Parish of Jefferson*,[69] wherein the Louisiana Supreme Court held that a supervisor's two-year campaign of harassment through questioning the worker's personal life, increasing the worker's workload, and pressuring the worker into accepting a demotion that led to the worker's termination did not establish IIED; and *Beaudoin v. Hartford Acc. & Indem. Co.*,[70]  in which the court held that the plaintiff failed to establish extreme and outrageous conduct when a supervisor shouted at her, cursed her, called her names like dumb, stupid, and fat, made comments about the inferiority of women, and falsely accused the employee of making mistakes.[71]

By contrast, however, the *Nicholas* court also cited cases where courts found the conduct alleged to be extreme and outrageous: *Bustamento v. Tucker*,[72] where the defendant made daily improper sexual comments and advances, threatened physical violence, and attempted to hit the plaintiff with a forklift; and *Walters v. Rubicon, Inc.*,[73]

---

[66] *Nicholas*, 765 So.2d at 1026.
[67] *Id.* at 1024–25, 1027.
[68] 702 So. 2d 727 (La. Ct. App. 2d Cir. 1997), writ den., 706 So. 2d 978 (La. 1998)
[69] 668 So. 2d 1292 (La. Ct. App. 5th Cir. 1996), writ den., 671 So. 2d 340 (La. 1996)
[70] 594 So. 2d 1049 (La. Ct. App. 3d Cir. 1992), writ den., 598 So. 2d 356 (La. 1992)
[71] *Id.* at 1027.
[72] 607 So. 2d 532 (La. 1992).
[73] Note 58, *supra.*

where supervisors continuously abused the plaintiff verbally, ordered him to ignore company policy, harassed him with phone calls, one supervisor endangered the plaintiff and his son when the supervisor cut in front of the plaintiff in traffic, and another supervisor mimicked pointing a gun at the plaintiff and mouthing "pow."[74]  For the following reasons, the Court finds that Plaintiffs' allegations herein are more analogous to the facts, reasoning, and analysis in *Bustamento* and *Walters.*

Turning to the specific allegations of Plaintiffs' petition, the following allegations purport to state a claim for IIED against the Defendants, including Bowers.  Plaintiffs allege that they were constantly subjected by Manriquez and Bowers to verbal criticisms and harassment, including but not limited to being called "boy," and "you people," along with suffering comments about their "appearance and job performance in stark racial terms and generalizations" based on their race.[75]  Plaintiffs allege Manriquez and Bowers emotionally abused them by "regularly and constantly denigrating, criticizing, manipulating their respective work schedules and in most instances harshly disciplining, harassing, denigrating, threatening and in most instances terminating these employees on the basis of their African-American race."[76]

Plaintiffs allege that Bowers specifically "constantly and directly addressed and called African-American employees, including most of the plaintiffs here, as 'niggers' and would constantly say the word" in the presence of Plaintiffs.[77]  Further, Bowers "would also abusively manipulate the petitioners' work schedules in retaliation for non-existent offenses or rules violations, and would also bring a handgun to the CCLA workplace in

---

[74] *Id.* at 1027.
[75] Rec. Doc. No. 1-4, p. 2.
[76] *Id.*
[77] *Id.*

full view of the petitioners and other employees, waving the handgun around recklessly, threatening to shoot individuals including many of your petitioners … ."[78]  Plaintiffs later reiterate the allegations that Bowers displayed and pointed a handgun at them in a threatening and assaulting manner; yet, Manriquez allegedly subsequently called "most" Plaintiffs to a meeting and warned them "that every one of them should tell no one else of the Bowers threatening gunplay incident, less they be terminated immediately from the CCLA for doing so."  Plaintiffs further allege that, subsequent to this meeting, Manriquez began terminating African-American employees, including Plaintiffs, "for minor if not non-existent offenses and alleged rules violations[.][79]

Finally, Plaintiffs allege that the "intense level of abusive treatment"[80] by Manriquez and Bowers described above, "in frequency, intensity and effect,"

> rose to the level of being extreme and outrageous, were intense and frequent enough to cause severe emotional distress suffered by the plaintiffs, some of which sought counseling or medical treatment for, and were of such an abusive manner as to reasonably conclude that the defendant/actors actually desired to inflict severe emotional distress and/or knew that severe emotional distress would be certain or substantially certain to result from their treatment of the plaintiffs herein.[81]

Considering the jurisprudence above from the Louisiana Supreme Court, the nature of the Plaintiffs' allegations, and the fact that Defendants were in an employment setting and in positions of power and authority over Plaintiffs, the Court finds that Plaintiffs have stated a claim for IIED that is plausible on its face.  The allegations rise far above mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities – being referred to or subjected to hearing the "n" word in the workplace by supervisors

---

[78] *Id.* at pp. 2-3.
[79] *Id.* at p. 4.
[80] *Id.*
[81] *Id.* at p. 5.

should not be tolerable in a civil society.  Neither should having a handgun pointed at employees, accompanied by threats of assault and/or murder and racial epithets, be tolerable in a civil society.

Defendants downplay these allegations, citing *Grant v. UOP, Inc.*,[82] (and similar cases) wherein a court found that the use of the "n" word in the plaintiff's presence by his supervisor and co-workers did not amount to intentional infliction of emotional distress. But Plaintiffs have not only alleged the use of this word.  They have alleged this fact in conjunction with a continuous pattern of widespread similarly abusive conduct.  Plaintiffs Ngemi, Howard, and Holliday alleged that they were required to seek medical treatment for the emotional distress they suffered allegedly at the hands of Defendants. Particularly troubling is the allegation Bowers brandished a gun while making physical threats against Plaintiffs in the workplace.  It is easily inferred from the allegations, and actually pled, that Defendants engaged in this conduct with the desire to cause severe emotional distress to Plaintiffs.  If proven, the allegations raised by Plaintiffs would support damages for IIED. That will be resolved by dispositive motions or a jury; however, at the pleadings stage where the Court must accept these allegations as true, Defendants' motion to dismiss the IIED claims is DENIED.

### F.  CCL's Vicarious Liability over Bowers' Alleged Conduct

Defendants move to dismiss Plaintiffs' claim against CCL that it is vicariously liable for Bowers' conduct.  First, Defendants maintain Plaintiffs have failed to plead any claims for IIED; the Court having dispensed with this argument above, it will not be addressed again here.   Second, Defendants maintain that Plaintiffs have not pled a claim for

---

[82] 972 F.Supp. 1042 (W.D. La. 1996).

vicarious liability for the intentional tort of an employee consistent with Louisiana law, as they have not alleged that Bowers was acting within the course and scope of his employment when engaging in his alleged conduct.  Citing the Louisiana Supreme Court's decision in *Baumeister v. Plunkett*,[83] Defendants claim that the intentional tortious conduct of an employee, to trigger vicarious liability, must be "so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interest."[84]

Defendants are correct, and the law makes clear that employers cannot be vicariously liable simply because an employee commits an intentional act on the business premises during working hours.[85]  Indeed, vicarious liability only attaches to an employer if "the employee is acting within the ambit of his assigned duties and also in furtherance of his employer's objective."[86]  The *Baumeister* court held that, even though a sexual assault occurred on the employer's premises and during working hours, there could be no vicarious liability as a matter of law because the act was not primarily employment-rooted, and the assault was not reasonably incidental to the performance of duties.[87]

Plaintiffs do not respond to this argument in their *Opposition*. The only argument regarding vicarious liability is argued in the context of Plaintiffs' hostile work environment allegations.  While the same conduct is alleged as to hostile work environment and IIED, Plaintiffs have failed to sufficiently allege facts to support a claim of vicarious liability under

---

[83] 673 So.2d 994, 996 (La. 1996).
[84] *Id.*
[85] *Id.*
[86] *Id.*
[87] *Id.* at 999-1000.

the jurisprudence set forth above.  Further, neither the original nor the supplemental petitions contain specific allegations of vicarious liability or course and scope in the IIED context – Plaintiffs just vaguely assert a claim under La. C.C. art. 2320.  Therefore, the Court will dismiss Plaintiffs' vicarious liability claim for Bowers' alleged IIED conduct without prejudice.

### G. Catchall Claims

Finally, Defendants move to dismiss catchall claims in the petition that assert claims for "all other torts, losses and damages as appropriate to each petitioner."[88] Plaintiffs also allege that Defendants are liable for "all other intentional acts, omissions, and acts of negligence that may be proven at the trial of this matter."[89]  Defendants maintain this type of pleading is improper under Rule 12 and inconsistent with *Twombly/Iqbal*.  The Court agrees.

The type of catchall pleading in these paragraphs does not comport with Rule 12 standards.  At trial, Plaintiffs cannot present evidence for, or recover damages for, claims that have not been specifically alleged and supported by factual allegations as required by Rule 12 and *Twombly/Iqbal*.  In *Bertrand v. Eli Lilly & Co.*, the court dismissed "boilerplate/catchall allegations of fault in a complaint finding that they did "not meet the pleading standards of *Iqbal* and *Twombly*, because they were not supported by specific factual allegations.[90]  The same is warranted here.

### III.  CONCLUSION

For the reasons set forth above, the *Motion to Dismiss*[91] filed by Defendants is

---

[88] Rec. Doc. No. 1-4, p.2
[89] *Id.* at pp. 8-9.
[90] 2013 WL 12184299, *9 (W.D. La. Mar. 13, 2013).
[91] Rec. Doc. No. 10.
Document Number: 64353

GRANTED in part and DENIED in part, with leave to amend the claim dismissed without prejudice.  Plaintiffs shall have 21 days from the date of this *Ruling* to file an Amended Complaint that comports with the Federal Rules of Civil Procedure and the Local Rules of the Middle District of Louisiana.  Plaintiffs have leave only to cure the deficiencies set forth herein and not to introduce new claims/allegations or to re-allege claims dismissed with prejudice.[92]

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 26th day of January, 2020.

**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[92] Plaintiffs are cautioned that they must follow the Local Rules of this Court and the Federal Rules of Civil Procedure in filing an amended complaint, which may differ from the rules governing state court amendment of pleadings.