## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

RONALD JACKSON, BRYANT
WILLIAMS, ALPHONSE McGHEE,
ALESI NGEMI, TYRONE HOWARD,
MYNESHA HOLLIDAY, JOSHUA
WHITFIELD, AND RICHARD WHITE, III

CIVIL ACTION

20-452-SDD-EWD

VERSUS

THE COUNTRY CLUB OF LOUISIANA,
INC. AND OMAR MANRIQUEZ

## RULING

This matter is before the Court on the second *Motion to Dismiss*[1] filed by

Defendants, The Country Club of Louisiana ("CCL") and Omar Manriquez ("Manriquez,"

or collectively "Defendants").  Plaintiffs, Ronald Jackson ("Jackson"), Bryant Williams

("Williams"), Alphonse McGhee ("McGhee"), Alesi Ngemi ("Ngemi"), Tyrone Howard

("Howard"), Mynesha Holliday ("Holliday"), Joshua Whitfield ("Whitfield"), and Richard

White, III ("White")(or collectively, "Plaintiffs") filed an *Opposition*[2] to this motion, to which

Defendants filed a *Reply*.[3]  For the following reasons, the *Motion* will be DENIED.

## I.    BACKGROUND

This case arises out of claims brought by several African American former

employees of CCL who collectively allege, *inter alia*, that Defendants subjected them to

race discrimination and intentional infliction of emotional distress ("IIED").  Defendants

---

[1] Rec. Doc. No. 43.
[2] Rec. Doc. No. 53.
[3] Rec. Doc. No. 54.

previously moved to dismiss Plaintiffs' state law claims, and the Court granted Defendants' motion with prejudice as to all state law claims but gave Plaintiffs limited leave to amend their vicarious liability claims for the alleged IIED conduct as to Defendant Bowers, [4] which Plaintiffs did.[5]

Defendants now move to dismiss Plaintiff's *Third Supplemental and Amending Petition*,[6] arguing that Plaintiffs have asserted claims previously dismissed with prejudice, and CCL cannot be vicariously liable for the purported assault by Defendant Bowers, as alleged. Plaintiffs oppose Defendants' motion, in part; Plaintiffs acknowledge that they "will NOT pursue [] claims" involving negligence,[7] and they concede their catchall claims were "NOT permissible as per Rule 12."[8] However, Plaintiffs oppose dismissal of their vicarious liability claims for the alleged IIED committed by Bowers.[9]

## II.    LAW & ANALYSIS

### A.  Motion to Dismiss Under Rule 12(b)(6)

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[10] The Court may consider "the complaint, its proper attachments, documents incorporated into

---

[4] Rec. Doc. No. 27. The Court adopts by reference the detailed factual background set forth in this previous *Ruling.*
[5] Rec. Doc. No. 35.
[6] *Id.*
[7] Rec. Doc. No. 53, p. 2.
[8] *Id.* at p. 3.
[9] For the sake of clarity, the Court notes that, in the previous *Ruling*, the Court dismissed the vicarious liability claim asserted against CCL as to Bowers' conduct, without prejudice, and granted leave to amend. The Court did not dismiss the IIED and vicarious liability claims asserted against CCL for the conduct of Manriquez, and that claim remains viable. In the pending motion, Defendants only seek to dismiss the vicarious liability claims asserted against CCL regarding Bowers, and that is the claim the Court addresses in this *Ruling*.
[10] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).

the complaint by reference, and matters of which a court may take judicial notice."[11]  "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[12]  In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[13]  A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[14]  However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[15]  In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[16]  "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[17]  On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[18]

---

[11] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

[12] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d at 467).

[13] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(internal citations and brackets omitted)(hereinafter *Twombly*).

[14] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(internal citations omitted)(hereinafter "*Iqbal*").

[15] *Twombly*, 550 U.S. at 570.

[16] *Iqbal*, 556 U.S. at 678.

[17] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

[18] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

### B.    Employer's Vicarious Liability

Under Louisiana law, an employer is liable for acts of its employee when they are committed in the course and scope of his employment.[19] These two terms are not synonymous. Rather, the course of employment refers to the time and place of the conduct; the scope of employment refers to the employment-related risk of injury.[20] "[A]n employee's conduct is within the course and scope of employment if the conduct is of the kind that the employee is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer."[21]

When determining whether an employer could be vicariously liable for an intentional tort committed by its employee, courts look to whether: (1) the tortious act was primarily employment rooted, (2) reasonably incidental to the performance of the employee's duties, (3) occurred on the employer's premises, and (4) occurred during the hours of employment.[22] However, this is not an exclusive list of factors.[23] Ultimately, an employer may only be liable for the intentional tort of its employee if the tortious conduct was "so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interest."[24] Essentially, once it is established that the employee acted within the course of his employment, the employer's vicarious liability hinges on whether the

---

[19] *LeBrane v. Lewis*, 292 So. 2d 216, 217–18 (La. 1974).
[20] *Benoit v. Capitol Mfg. Co.*, 617 So. 2d 477, 479 (La. 1993).
[21] *Crawford v. Wal-Mart Stores, Inc.*, No. 10-805-M2, 2011 WL 3206196, at *2 (M.D. La. July 26, 2011).
[22] *Id.*
[23] *Miller v. Keating*, 349 So. 2d 265, 268 (La. 1977).
[24] *Baumeister v. Plunkett*, 673 So. 2d 994, 996 (La. 1996); *Crawford*, 2011 WL 3206196, at *2.

"purpose of serving the employer's business actuated the employee to any appreciable extent."[25]

Here, Plaintiffs have alleged that all acts of racial abuse and discrimination by Corey Bowers occurred while he was "on duty in his position of employment" and "on the premises of the defendant CCLA campus and workplace."[26] Accepting all well-pleaded facts as true, this places the actions within the course of Bowers' employment. Thus, the third and fourth *LeBrane* factors are met in this case.

### C.  Scope of Employment of Bowers

Although the requirement that the tortious actions be within the course of the employees' employment is satisfied, the question remains whether the alleged actions fall within the scope of such employment—whether "the employee [was] acting within the ambit of his assigned duties and also in furtherance of his employer's objective."[27]

Plaintiffs allege Bowers was a "supervisor of at least some of the [] plaintiffs."[28] They further allege that Bowers "constantly and directly addressed and called African American employees . . . as 'niggers.'"[29] Additionally, they allege that "Bowers would on occasion [] bring a handgun to the CCLA workplace" and "abusively manipulate" Plaintiffs' work schedules in retaliation for non-existent offenses or rules violations.[30] They refer to Bowers' gunplay as "amounting to assault and intimidation"[31] and allege that it was "done in furtherance of his management and supervision of the plaintiffs."[32] Plaintiffs even allege

---

[25] *Crawford*, 2011 WL 3206196, at *2 (citing *Johnson v. Littleton*, 37 So. 3d 452 (La. App. 2 Cir. 2010)).
[26] Rec. Doc. No. 35, p. 10.
[27] *Crawford*, 2011 WL 3206196, at *2.
[28] Rec. Doc. No. 35, p. 2.
[29] *Id.* at p. 5.
[30] *Id.*
[31] *Id.* at p. 7.
[32] *Id.* at p. 10.

that "Bowers' acts of actual racial abuse and discrimination against your plaintiffs were conducted in his course and scope of supervisory employment with the defendant CCLA."[33]

However, according to Defendants, Plaintiffs have failed to provide any specific factual allegation as to how this action was "within the ambit of his assigned duties."[34] As Defendants point out, there are no facts alleged pointing to the gunplay as being reasonably incidental to the performance of Bowers' duties.[35] Additionally, Plaintiffs allege no specific factual allegations that the persistent denigration alleged was done "within the ambit of his assigned duties."[36]

On the other hand, Plaintiffs have alleged that Bowers' conduct was generally abusive in his supervision of the relevant Plaintiffs, just like the alleged conduct of CCL's General Manager Manriquez's.[37]  The Court must also read the allegations against Bowers in context with those alleged against Manriquez, particularly the allegation that Manriquez called "most" of the Plaintiffs to a meeting and warned them "that every one of them should tell no one else of the Bowers threatening gunplay incident, less they be terminated immediately from the CCLA for doing so."[38]  From this alleged fact, taken as true at this procedural posture, it could be inferred that Bowers' conduct was employment-rooted or incidental to his supervision style since his boss - the General Manager of CCL - allegedly threatened the employees with termination if they reported Bowers' conduct.

In supporting their argument as to Bowers' alleged IIED conduct, Defendants cite

---

[33] *Id.*
[34] *Crawford*, 2011 WL 3206196, at *2.
[35] Rec. Doc. No. 43-2, p. 8.
[36] *Crawford*, 2011 WL 3206196, at *2.
[37] The specific allegations made against Manriquez are detailed in the Court's previous *Ruling*.
[38] Rec. Doc. No. 35, p. 9.

two cases wherein courts found no vicarious liability.[39] In *Scott v. Commercial Union Ins. Co.*, the Louisiana First Circuit Court of Appeal held that vicarious liability did not attach to an employer when the employee, a mechanic, hit a customer in the face.[40] The *Scott* court found that, although the incident occurred at the employer's business and during work hours, the incident arose after the employee and the plaintiff were "'discussing personal business.'"[41] Thus, the conduct could not be considered to be in furtherance of the employer's interests.[42]

Defendants also cite to *Winstel v. City of Shreveport*,[43] wherein the plaintiff was sexually assaulted by an administrative employee on the employer's premises, but not during business hours.[44]  The court also found that there were no factual allegations showing how the employee's actions "were activated at least in part by a purpose to serve his employer."[45] Applying the reasoning and analysis of *Winstel* to the case at bar, Defendants submit that Bowers' conduct alleged here should not be considered to be in furtherance of the employer's objectives.[46]

The Court understands the cases cited by Defendants but notes an important distinguishing fact: the employees in the cases cited above were not "acting within the ambit of [their] assigned duties," nor were they performing such duties "in furtherance of [their] employer's objective."[47] The Court finds that the facts alleged in the present case are more closely analogized to the following cases.

---

[39] Rec. Doc. No. 43-2, pp. 6–7.
[40] *Scott v. Commercial Union Ins. Co.*, 415 So. 2d 327 (La. App. 1st Cir. 1982).
[41] *Id.* at 329.
[42] *Id.*
[43] Rec. Doc. No. 43-2, p. 7.
[44] *Winstel v. City of Shreveport*, No. 12-2617, 2013 WL 4888614, at *6 (W.D. La. Sept. 1, 2013).
[45] *Id.*
[46] *Id.*
[47] *Baumeister*, 673 So. 2d at 996.

In *LeBrane*, the Louisiana Supreme Court held intentional tortious conduct of an employee was "so closely connected . . . to his employment-duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations" when a supervisory employee stabbed a former co-employee after discharging said co-employee and ordering him off the premises.[48]

In *Weysham v. New Orleans Public Service, Inc.*, the Louisiana Fourth Circuit Court of Appeal held that the intentional tortious conduct of an employee was "related closely enough to [the employee's] furtherance of [the] employer's interests (*i.e.*, protection of the bus and passengers)" when an employee-bus driver cursed at and grabbed a bicyclist who he believed had thrown bottles at the bus.[49]

The case upon which Defendants rely most heavily is *Baumeister*.[50] In that case, the Louisiana Supreme Court found that the sexual assault of a nurse by her supervisor was not reasonably incidental to the performance of that supervisor's duties.[51] However, the court noted that: "This is not a case where a supervisor's performance of his duties, such as disciplining or threatening to discipline a subordinate employee, leads to an intentional tort."  The facts alleged in this case regarding Bowers' conduct suggest that this is a case where a supervisor's duties, like disciplining his employees, may lead to an intentional tort.

In the present case, Bowers has been accused of using racially discriminatory language and brandishing a gun during work hours, while supervising certain Plaintiffs,

---

[48] *LeBrane v. Lewis*, 292 So. 2d 216, 218 (La. 1974).
[49] *Weysham v. New Orleans Public Service, Inc.*, 385 So. 2d 19, 23 (La. App. 4th Cir. 1980).
[50] *Baumeister*, 673 So. 2d at 998.
[51] *Id.* at 999.

and in connection with manipulating their work schedules.  The Court acknowledges that the allegations in the *Third Supplemental and Amending Petition* could be more concise; however, at the pleadings stage, the Court cannot say that no inference could be drawn from the allegations giving rise to a vicarious liability claim.  Evidence may prove otherwise; however, the Court does not consider evidence at this procedural posture but, rather, takes Plaintiffs' well-pleaded allegations as true.

## III.    CONCLUSION

For the reasons set forth above, Defendants' *Motion to Dismiss*[52] is DENIED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 8th day of December, 2021.

**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[52] Rec. Doc. No. 43.
Document Number: 70261